IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| **ABA ATLAS,**<br>**Plaintiff,**<br><br>**v.**<br><br>**KIARA LEANN LEONA WILLIAMS,**<br>**Defendant.** | Civil Action No. 5:26-cv-000827 |

**COMPLAINT AND JURY DEMAND**

**NOW COMES** Plaintiff Aba Atlas (hereinafter "Atlas" or "Plaintiff"), by and through undersigned counsel, complaining of Defendant Kiara Leann Leona Williams (hereinafter "Williams" or "Defendant"), and alleges and says as follows:

**NATURE OF THE ACTION**

1. This action arises from Defendant's repeated publication and republication of false statements of fact and defamatory implications concerning Plaintiff to a substantial online audience through YouTube, Instagram, a public GoFundMe campaign, and related online publications.
2. Beginning in or around May 2026, Defendant, individually and doing business online as "Kiki Araceli," began publishing accusations that Plaintiff engaged in criminal, sexually coercive, predatory, dishonest, harassing, and otherwise seriously disreputable conduct, including accusations that Plaintiff doxxed a child, deceived women regarding fertility in order to obtain unprotected sex, engaged in conduct Defendant associated with *"rape by*

*fraud,"* stalked and harassed Defendant, and made or participated in non-consensual intimate recordings.

3. Plaintiff denies the challenged accusations and alleges that Defendant repeatedly presented disputed allegations, speculation, selective information, and unverified third-party claims as established or substantially established facts.

4. Defendant's publications were not isolated statements. Defendant repeatedly returned to the same accusations, solicited additional allegations from third parties, offered anonymity to sources she acknowledged might be unverifiable, and continued publishing after receiving written notice specifically disputing the accusations and directing preservation of evidence.

5. Plaintiff seeks damages and other relief available at law for actionable false statements of fact and defamatory implications. Plaintiff does not seek liability for constitutionally protected opinion, rhetorical hyperbole, or truthful statements.

**PARTIES**

6. Plaintiff Aba Atlas is a natural person, a citizen of Canada, and domiciled in Montreal, Quebec, Canada. Plaintiff is a content creator and one of the persons publicly associated with the YouTube channel "Aba N Preach."

7. Defendant Kiara Leann Leona Williams is a natural person who publishes online under the name "Kiki Araceli." Upon information presently available to Plaintiff, Defendant is domiciled in Kansas City, Jackson County, Missouri. During material portions of the events giving rise to this action, Defendant resided at 2422 Gazebo Drive, Apt. D, Morrisville, North Carolina 27560, in Wake County, before relocating to Kansas City, Missouri.

## JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) because this action is between a citizen or subject of a foreign state and a citizen of a State, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

9. Complete diversity exists because Plaintiff is a citizen of Canada domiciled in Quebec, Canada, while Defendant is, upon information and belief, a citizen of Missouri domiciled in Kansas City, Missouri.

10. This Court has personal jurisdiction over Defendant because Defendant resided in Wake County, North Carolina during material events underlying the parties' relationship and during the beginning of the publication campaign alleged herein, and because Defendant purposefully engaged in conduct giving rise to Plaintiff's claims while residing in and acting from North Carolina.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District, including events occurring while Defendant resided in Wake County, North Carolina.

12. Wake County is assigned to the Western Division of the United States District Court for the Eastern District of North Carolina.

## STATEMENT OF FACTS

13. In or around Spring 2026, Plaintiff and Defendant met and developed a personal relationship. At that time, Plaintiff was domiciled in Montreal, Quebec, Canada, and Defendant resided in Morrisville, North Carolina 27560, in Wake County.

14. During the relationship, Plaintiff and Defendant communicated through telephone calls, text messages, and other electronic communications. During those communications contraception, fertility, pregnancy, and the possibility of conception were discussed.

15. Plaintiff alleges that he did not represent to Defendant that conception was impossible. To the contrary, the parties' contemporaneous communications and conduct reflected their mutual awareness that pregnancy remained possible and their efforts to avoid conception, as demonstrated by the April 9, 2026, call, searches, and messages described below.

16. Consistent with that mutual understanding, on April 9, 2026, Plaintiff placed an outgoing telephone call to Defendant at approximately 2:20 p.m. that lasted approximately one hour and seven minutes.

17. During that call, at approximately 2:56 p.m. and 2:58 p.m., Plaintiff searched for emergency-contraception options and availability in Raleigh, North Carolina, for Defendant. These searches were consistent with the parties' expressed concern about the possibility of pregnancy.

18. Plaintiff and Defendant also exchanged text messages concerning emergency contraception. Defendant stated that side effects from Ella, an emergency-contraception medication, were subsiding and that Plan B was scheduled for pick up the following morning.

19. Defendant thanked Plaintiff for helping locate emergency contraception and further stated, *"I'll pick up a plan b immediately when I arrive back to Raleigh."*

20. These exchanges reflect the parties' awareness that conception remained possible and their efforts to avoid pregnancy.

21. By May 14, 2026, the parties' personal relationship had become the subject of public discussion.

22. In a Reddit post entitled *"A Personal Statement: Pregnancy, Loss, and Privacy,"* Defendant stated that she had *"nothing negative to say regarding my experiences with him,"* that *"Everyone involved is wrong and there is no side to choose here,"* and that she would not speak further about the matter. Defendant also stated that ties had been cut, and the persons involved had been blocked.

23. Beginning in or around May 2026, Defendant began publishing a series of YouTube videos and other online content concerning Plaintiff. The challenged publications included accusations and implications concerning doxxing, sexual conduct, fertility, intimidation, stalking, harassment, bullying, and other alleged misconduct.

24. Defendant owns, operates, and/or controls a YouTube channel under the name "Kiki Araceli," through which she has disseminated false and defamatory statements concerning Plaintiff to members of the public.

25. Defendant repeatedly accused Plaintiff of being a child doxxer and of targeting children through YouTube videos and Community posts. In YouTube Community posts published during the May 2026 dispute, Defendant stated that Plaintiff was *"targeting little girls as well by doxxing places of residence"* and was *"a child doxxer on top of everything else."*

26. In another Community post, Defendant wrote, *"Yeah he loves to doxx little girls. He's such a creep."* Plaintiff denies that he doxxed Defendant's child or other children.

27. Additionally, in another YouTube Community post during the same period, Defendant stated, *"FBI & police reports filed. Speaking to officers soon,"* and thanked Plaintiff for allegedly providing *"further evidence to investigate for prosecutors."*

28. During the same period, Defendant also made child-doxxing accusations in a video published on Defendant's "Kiki Araceli" YouTube channel and referred to predators, Jeffrey Epstein, and incarceration. Plaintiff alleges that these statements, considered together, conveyed that he had committed serious and potentially prosecutable misconduct involving children.

29. Defendant also repeatedly accused Plaintiff of doxxing Defendant and other persons and published or republished information she characterized as proving those accusations. Plaintiff denies the actionable accusations of unlawful doxxing and intimidation.

30. In a video published on Defendant's "Kiki Araceli" YouTube channel, Defendant accused Plaintiff of lying about his fertility to women in order to obtain unprotected sexual intercourse. At approximately eight (8) seconds into the video, Defendant stated that Plaintiff had *"lied about his fertility to multiple women,"* and at approximately twenty-four (24) minutes and twenty (20) seconds stated that he had been *"tricking them into unprotected sex, saying that he has low sperm count or that he's infertile."*

31. In the same video, at approximately nine (9) minutes and fifty-one (51) seconds, Defendant acknowledged that Plaintiff's fertility condition *"may possibly be true"* and stated, *"we don't know because he's never showed proof."* Defendant nevertheless continued to accuse Plaintiff of intentional sexual deception.

32. At approximately thirty-six (36) minutes and thirty-six (36) seconds in the same video, Defendant introduced the concept of *"rape by fraud"* in connection with the fertility accusations, stating in substance that *"a lot of this could have fallen under"* that concept, that it *"depends on the circumstances,"* and that she was *"just going to let that float in the*

*air."* Plaintiff alleges that, in context, the discussion conveyed that he had engaged in sexually coercive or criminal conduct.

33. One or more of Defendant's videos concerning Plaintiff's fertility and sexual conduct were republished or amplified by other content creators with larger audiences, increasing dissemination of the challenged accusations.

34. Defendant also published or displayed private and sensitive text messages that Plaintiff had sent to a third party and discussed Plaintiff's private medical and sexual-health information in her publications without his consent.

35. During the same dispute, Defendant published information concerning Plaintiff's location and residence when she publicly identified Café Canard at 2199 Rue Ste-Catherine E in Montreal, stated that the café was *"right across from a lovely street of luxurious condos,"* encouraged viewers to visit the café and surrounding area, and later stated, *"I can be subtle too,"* while recommending that viewers check out the café and the places around it.

36. Defendant also sent Plaintiff a direct message stating, *"You doxxed my daughter. Watch your fucking back."* Plaintiff alleges that this message, considered with Defendant's public location-related posts and repeated accusations, reflects Defendant's intent and course of conduct.

37. By May 20, 2026, Plaintiff had reported to YouTube that Defendant was publishing information designed to lead viewers to Plaintiff's Montreal residence, including posts identifying a location across the street from where he lived. Plaintiff advised YouTube that persons were already messaging him with his full address and threats as a result of the publications.

38. On May 22, 2026, Kianah Dames, a YouTube Strategic Partnerships Manager, confirmed to Plaintiff by email that the two channels Plaintiff had previously reported in that correspondence had been successfully taken down. Plaintiff alleges that Defendant thereafter resumed publishing through another YouTube channel and continued publishing information concerning Plaintiff.

39. On July 16, 2026, Defendant created and published a publicly accessible GoFundMe campaign substantially concerning her dispute with Plaintiff and established a fundraising goal of $8,500.00.

40. The GoFundMe campaign expressly identified Plaintiff as *"Aba Atlas from the YouTube channel Aba and Preach"* and solicited monetary donations for, among other things, Defendant's medical and medication expenses and for Defendant *"to pursue legal counsel against Aba Atlas from Aba and Preach."*

41. In the GoFundMe publication, Defendant accused Plaintiff of doxxing her full legal name, disclosing Defendant's and her child's residential locations in multiple states, doxxing other women, disclosing private information, and engaging in such conduct *"in an attempt to intimidate, threaten, or cause emotional distress."*

42. Defendant further accused Plaintiff of encouraging his viewers to sexually harass women, publishing private sexual communications to *"defame, publicly degrade, shame, and to destroy their credibility,"* and contacting another woman's employer *"in an attempt to get her fired."*

43. Defendant attributed injuries and financial losses to Plaintiff's alleged *"doxxing, stalking, and harassment,"* asserting that Plaintiff's conduct caused her to leave North Carolina,

terminate her residential lease early, incur medical and relocation expenses, and develop what Defendant characterized as a *"severe anxiety disorder."*

44. Defendant also used the GoFundMe publication to make allegations concerning Plaintiff's sexual and medical history, including allegations that Plaintiff had contracted chlamydia twice, failed to disclose that information to women, and continued to have unprotected sex with multiple women within short time frames.

45. As of September 21, 2026, Defendant's GoFundMe campaign continued to seek $8,500.00 and had received approximately $1,163.00 in donations.

46. On September 13, 2026, Defendant published a YouTube video entitled *"Call To Action,"* in which she solicited additional accusations and information concerning Plaintiff from members of the public.

47. In the *"Call To Action"* video Defendant stated that she and others had *"been reaching out to people,"* asserted that there were *"so many stories of women who are scared to come forward against Aba,"* and invited persons possessing information concerning Plaintiff to submit stories, screenshots, photographs, videos, timelines, and other materials for potential publication.

48. Additionally, Defendant offered prospective sources anonymity and expressly acknowledged that *"many who share their stories may be unverifiable due to protecting their anonymity."*

49. In the same September 13, 2026 *"Call To Action"* video, notwithstanding that acknowledged verification problem, Defendant repeated allegations attributed to purported sources concerning alleged misconduct by Plaintiff toward his assistant and asserted that

other individuals had reported *"extreme bullying and harassment"* initiated by Plaintiff within Discord communities.

50. Defendant further discussed an allegation that Plaintiff had made a non-consensual intimate recording and stated that it was *"not the only time"* Plaintiff had allegedly engaged in such conduct, asserting that another individual had reported a similar experience.

51. Over the weekend of September 11-13, 2026, Defendant directly contacted or caused inappropriate communications to be directed toward Plaintiff, members of his staff, and persons within his circle of friends.

52. On September 11, 2026, Plaintiff sent Defendant a formal litigation-hold notice stating that litigation had been anticipated since at least June 19, 2026, directing preservation of relevant documents and electronically stored information, and directing further communications concerning the dispute to counsel.

53. On September 12, 2026, Defendant responded by email, *"Do not contact me again with this fuckshit Aba. Child doxxing creep."*

54. On September 13, 2026, Plaintiff advised counsel that Defendant had contacted him, his staff, and persons within his circle of friends repeatedly over the weekend, despite his direction that communications concerning the dispute be directed to counsel.

55. Plaintiff further reported that Defendant had sent a video to persons around him in which she indicated that she intended to continue contacting others and questioned whether a lawsuit would actually be filed.

56. On September 18, 2026, Plaintiff, through counsel, sent Defendant a cease-and-desist demand identifying and disputing accusations that Plaintiff engaged in intimidation,

doxxed a child, committed *"rape by fraud,"* or engaged in other criminal or seriously disreputable conduct.

57. After receiving the September 18, 2026, cease-and-desist demand, Defendant did not cease publishing content concerning Plaintiff. Defendant instead published the YouTube video entitled *"I Brought More Receipts + The New Litigation Abuse C&D Dropped!"*

58. By September 21, 2026, Plaintiff had reported to counsel that Defendant had posted the demand letter online and continued producing content concerning him.

59. In the *"I Brought More Receipts + The New Litigation Abuse C&D Dropped!"* video, Defendant discussed the threatened litigation, displayed and discussed the cease-and-desist correspondence, and repeated or expanded upon accusations concerning Plaintiff.

60. In the YouTube video *"I Brought More Receipts + The New Litigation Abuse C&D Dropped!,"* Defendant addressed the April 9, 2026, telephone call and a later internet search concerning Plan B. Defendant relied on the difference in timing to accuse Plaintiff of lying about the subject of the call and asserted that Plaintiff had been planning to provide Defendant with another Plan B pill.

61. Defendant also accused Plaintiff of intentionally misrepresenting Defendant's prior relationship and parenting history and asserted that Plaintiff changed the narrative in order to cause others to dislike her.

62. Defendant discussed Plaintiff's medical and urological history, challenged Plaintiff's representation that a physician had informed him that his sperm count was very low, asserted that records displayed by Plaintiff did not establish the claimed fertility condition, and made additional statements concerning Plaintiff's sexual-health history.

63. Defendant further repeated allegations concerning whether Plaintiff had impregnated women, whether he had represented to women that he could not have children, and whether women had been misled concerning his fertility.

64. On September 24, 2026, YouTube Legal Support notified Plaintiff that it had removed a community post from Defendant's newer channel for a privacy violation after the post displayed Plaintiff's work email address in full. Plaintiff had advised YouTube that Defendant was using the newer channel after prior channel removals and was continuing to publish his private information.

65. As of September 28, 2026, Defendant's "Kiki Araceli" YouTube channel contained eighteen publicly available videos, twelve of which concerned Plaintiff, the parties' dispute, and/or accusations concerning Plaintiff.

66. Those twelve videos had collectively accumulated approximately 389,000 views, with individual videos receiving approximately 10,000 to 104,000 views.

67. Plaintiff alleges that the actionable factual accusations and defamatory implications published by Defendant concerning him are false.

68. Defendant's acknowledgment that anonymously submitted accusations might be unverifiable, her active solicitation of additional accusations, the contradictory information available to her, and her continuation of challenged publications after specific written notice are facts relevant to Defendant's knowledge, reckless disregard, and state of mind.

69. Defendant published and republished the challenged statements to third parties through YouTube, the GoFundMe campaign, Instagram, direct third-party communications, and other online dissemination.

70. Plaintiff alleges that Defendant's publications have caused injury to his reputation, goodwill, personal and professional relationships, business and professional opportunities, and have caused other compensable damages to be established through discovery and at trial.

71. Upon information and belief, Defendant's online publications were monetized or otherwise used to generate engagement, audience growth, donations, and/or other financial benefit. The existence and amount of any financial benefit attributable to the challenged publications will be established through discovery.

72. Defendant's publications included videos, YouTube Community posts, online fundraising statements, and communications with third parties, which were disseminated to audiences beyond the parties themselves.

**COUNT ONE - DEFAMATION PER SE (LIBEL PER SE)**

73. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

74. Defendant published and republished statements of purported fact concerning Plaintiff to third parties through YouTube, GoFundMe, Instagram, direct communications, and other online publications.

75. The challenged statements include, among other things, assertions and factual implications that Plaintiff doxxed a child, engaged in sexually coercive or criminal conduct described in connection with *"rape by fraud,"* intentionally deceived women regarding fertility in order to obtain unprotected sex, stalked or harassed Defendant, engaged in non-consensual intimate recording, and engaged in a pattern of intimidation, bullying, or other unlawful conduct.

76. The challenged statements were of and concerning Plaintiff, and viewers and recipients reasonably understood the statements to refer to Plaintiff.

77. Plaintiff alleges that the actionable statements were false and that Defendant's presentation, combination, and selective use of facts, accusations, and purported source material also conveyed materially false and defamatory factual implications concerning Plaintiff.

78. The challenged accusations are capable of being proven true or false and, in context, would reasonably be understood as assertions of actual fact rather than mere rhetorical hyperbole or protected opinion.

79. Defendant's written and audiovisual publications, considered in their full context, falsely accused Plaintiff of criminal or seriously disreputable conduct, including child doxxing and sexually coercive misconduct, and tended to expose Plaintiff to public contempt, disgrace, and ridicule. Plaintiff alleges that the actionable defamatory meaning is apparent from the publications themselves, without reliance on extrinsic facts.

80. The actionable publications constitute libel per se under North Carolina law to the extent their defamatory meaning is apparent on their face.

81. Facts supporting actual malice include, without limitation, Defendant's acknowledgment that anonymous accusations might be unverifiable; her solicitation and republication of additional accusations despite that acknowledged inability to verify them; her publication of accusations contradicted by information available to her; and her continuation or republication of challenged accusations after receiving specific written notice identifying Plaintiff's denials and objections.

82. As a direct and proximate result of Defendant's publications, Plaintiff has suffered and continues to suffer reputational injury, loss of goodwill, personal and professional harm,

economic loss, embarrassment, humiliation, and other actual damages in an amount to be proven at trial.

83. Defendant's conduct, including the continuation and republication of challenged accusations after notice, was willful, wanton, malicious, and undertaken in conscious and intentional disregard of Plaintiff's rights.

**COUNT TWO - DEFAMATION PER QUOD (LIBEL PER QUOD)**

84. Plaintiff repeats and realleges the foregoing factual allegations as if fully set forth herein and pleads this count in the alternative to Count One.

85. To the extent any challenged publication is not defamatory on its face, Defendant published statements and implications concerning Plaintiff that acquired a defamatory meaning when considered with the surrounding publications, the parties' dispute, and the context in which viewers encountered the statements.

86. These publications included allegations concerning Plaintiff's fertility representations, alleged doxxing and intimidation, and purported misconduct attributed to anonymous third parties. Plaintiff alleges that the challenged factual assertions and implications were false, were communicated to third parties, and were understood to refer to him.

87. Defendant acted with the degree of fault required by applicable law, including actual malice. Defendant solicited and repeated allegations she acknowledged could be unverifiable and continued publishing disputed allegations despite information contradicting them.

88. As a direct and proximate result, Plaintiff alleges actual pecuniary injury, including lost business and professional opportunities and impairment of commercial relationships.

89. Plaintiff seeks recovery of actual and special damages proved and recoverable under applicable law.

**COUNT THREE - PUNITIVE DAMAGES**

90. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

91. Defendant's conduct was willful and wanton and was undertaken with malice and a conscious and intentional disregard of and indifference to Plaintiff's rights and the consequences of Defendant's conduct.

92. Defendant continued publishing and republishing challenged accusations after receiving notice that Plaintiff disputed the accusations and intended to pursue litigation, while also acknowledging that certain anonymously supplied accusations might be unverifiable.

93. Plaintiff therefore seeks punitive damages pursuant to N.C. Gen. Stat. § 1D-15 and other applicable law in an amount to be determined by the jury, subject to all limitations imposed by law.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable pursuant to Federal Rule of Civil Procedure 38.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully prays that the Court:

1. Enter judgment in favor of Plaintiff and against Defendant;
2. Award Plaintiff actual, compensatory, presumed, and special damages to the extent permitted by law, in an amount to be determined at trial and exceeding $75,000.00 in the aggregate, exclusive of interest and costs;
3. Award punitive damages to the extent permitted by applicable law;

4. Award pre-judgment and post-judgment interest as allowed by law;
5. Tax the costs of this action to Defendant and award attorney's fees only to the extent authorized by statute or other applicable law;
6. Allow a jury trial on all issues so triable;
7. Grant declaratory or other equitable relief, if any, that is legally available and consistent with the First Amendment and applicable law; and
8. Grant such other and further relief as the Court deems just and proper.

This the 22 day of October 2026.

**RANCHOR HARRIS LAW, PLLC**
**/s/ S. Ranchor Harris, III**
S. Ranchor Harris, III
N.C. Bar No. 21022
Ranchor Harris Law, PLLC
1784 Heritage Center Drive
Suite 204-E
Wake Forest, NC 27587
919-249-5006 (Direct Line)
919-589-4845 (Facsimile)
ranchorharris.com